# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Alexandria Division


JOSEPH O. FASUSI,

       Plaintiff,

v.                                 CIVIL NO. 1:19-cv-392

EQUIFAX INFORMATION SERVICES, LLC,

SERVE:     Corporation Service Company
              100 Shockoe Slip, Fl 2
              Richmond, VA   23219-4100


EXPERIAN INFORMATION SOLUTIONS, INC.,

SERVE:     David N. Anthony, Registered Agent
              Troutman Sanders, LLP
              1001 Haxall Point
              Richmond, VA   23219

TRANS UNION, LLC,

SERVE:     Corporation Service Company
              100 Shockoe Slip, Fl 2
              Richmond, VA   23219-4100

TD FINANCE,

SERVE:     Secretary of the Commonwealth
              Service of Process Department
              P.O. Box 2452
              Richmond, VA   23218


CAPITAL ONE, NATIONAL ASSOCIATION,
d/b/a CAPITAL ONE AUTO FINANCE,

SERVE:     Corporation Service Company, Registered Agent
              100 Shockoe Slip, Fl 2
              Richmond, VA   23219-4100

**CONSUMER PORTFOLIO SERVICES, INC.,**

SERVE:      CT Corporation System, Registered Agent
4701 Cox Road, Suite 285
Glen Allen, VA    23060

**JP MORGAN CHASE BANK, NATIONAL ASSOCIATION,**

SERVE:      CT Corporation System, Registered Agent
4701 Cox Road, Suite 285
Glen Allen, VA    23060

**GATEWAY ONE LENDING & FINANCE,**

SERVE:      Secretary of the Commonwealth
Service of Process Department
P.O. Box 2452
Richmond, VA    23218

**MANUFACTURERS AND TRADERS TRUST COMPANY,**

SERVE:      Corporation Service Company, Registered Agent
100 Shockoe Slip, Fl 2
Richmond, VA    23219-4100

**WELLS FARGO DEALER SERVICES, INC.,**

SERVE:      Corporation Service Company, Registered Agent
100 Shockoe Slip, Fl 2
Richmond, VA    23219-4100

**AMERICREDIT FINANCIAL SERVICES, INC.,**

SERVE:      Corporation Service Company, Registered Agent
100 Shockoe Slip, Fl 2
Richmond, VA    23219-4100

**TOYOTA MOTOR CREDIT CORPORATION,**

SERVE:      CT Corporation System, Registered Agent
4701 Cox Road, Suite 285
Glen Allen, VA    23060

**REGIONAL ACCCEPTANCE CORPORATION,**

**SERVE:**      **CT Corporation System, Registered Agent**
               **4701 Cox Road, Suite 285**
               **Glen Allen, VA  23060**

**ALLY FINANCIAL, INC.**

**SERVE:**      **CT Corporation System, Registered Agent**
               **4701 Cox Road, Suite 285**
               **Glen Allen, VA  23060**

**WESTLAKE SERVICES, INC.,**

**SERVE:**      **CT Corporation System, Registered Agent**
               **4701 Cox Road, Suite 285**
               **Glen Allen, VA  23060**

**ONEMAIN FINANCIAL, INC.,**

**SERVE:**      **CT Corporation System, Registered Agent**
               **4701 Cox Road, Suite 285**
               **Glen Allen, VA  23060**

**SANTANDER CONSUMER USA, INC.**

**SERVE:**      **CT Corporation System, Registered Agent**
               **4701 Cox Road, Suite 285**
               **Glen Allen, VA  23060**

**DARCARS AUTOMOTIVE GROUP, doing business as
DARCARS FORD and DARCARS LANHAM KIA,**

**SERVE:**      **Secretary of the Commonwealth**
               **Service of Process Department**
               **P.O. Box 2452**
               **Richmond, VA  23218**

      **Defendants**

# <u>COMPLAINT</u>

      **COMES NOW** the Plaintiff, **JOSEPH O. FASUI**, by counsel and as for his Complaint

against the Defendants, alleges as follows:

## PRELIMINARY STATEMENT

1.      This is an action for Defendants violations of the Federal Fair Credit Reporting Act ("FCRA") 15 U.S.C. §1681 et seq. The Consumer Reporting Agency ("CRA") Defendants provided the Plaintiff's consumer reports to the respective Furnisher Defendants without a permissible purposes to do so.   The Furnisher Defendants violated the FCRA by obtaining and using the Plaintiff's consumer reports they received from the respective CRA Defendants without a permissible purpose.   Plaintiff seeks actual, statutory and punitive damages, costs and attorney's fees for each of the Defendants willful violations pursuant to 15 U.S.C.. §§1681n and 1681o.

## JURISDICTION

2.      The jurisdiction of this Court is conferred by 15 U.S.C. §1681p and 28 U.S.C. §1331.

3.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(1) inasmuch as Defendants maintain their registered offices or statutory office within this District. In addition, a significant part of the Plaintiff's claims occurred within this District and Division.

## PARTIES

4.      The Plaintiff is a natural person and resident of Maryland.   He is a consumer as defined by the FCRA.

5.      Upon information and belief, **EQUIFAX INFORMATION SERVICES, LLC.** ("**Equifax**") is a limited liability company authorized to do business in the Commonwealth of Virginia through its registered offices in Richmond, Virginia.

6.      Upon information and belief, **Equifax** is a "consumer reporting agency," as defined in 15 U.S.C. §1681a(f).   Upon information and belief, **Equifax** is regularly engaged in the

business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d) to third parties.

7. Upon information and belief, **Equifax** disburses such consumer reports to third parties under contract for monetary compensation.

8. Upon information and belief, **EXPERIAN INFORMATION SOLUTIONS, INC.** ("**Experian**") is a corporation authorized to do business in the Commonwealth of Virginia through its registered offices in Richmond, Virginia.

9. Upon information and belief, **Experian** is a "consumer reporting agency," as defined in 15 U.S.C. §1681a(f). Upon information and belief, **Experian** is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d) to third parties.

10. Upon information and belief, **Experian** disburses such consumer reports to third parties under contract for monetary compensation.

11. Upon information and belief, **TRANS UNION, LLC** ("**Trans Union**") is a limited liability company authorized to do business in the Commonwealth of Virginia through its registered offices in Richmond, Virginia.

12. Upon information and belief, **Trans Union** is a "consumer reporting agency," as defined in 15 U.S.C. §1681a(f). Upon information and belief, **Trans Union** is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d) to third parties.

13. Upon information and belief, **Trans Union** disburses such consumer reports to third parties under contract for monetary compensation.

14. Defendant **TD FINANCE** ("**TD**") is a foreign company transacting business in

Virginia as a credit lender and is a "furnisher" as governed by the FCRA.

15. Defendant **CAPITAL ONE, NATIONAL ASSOCIATION,** ***doing business as*** **Capital One Auto Finance, ("Capital One")** is a Corporation authorized to do business in the Commonwealth of Virginia through its registered agent's office in Richmond, Virginia as a credit lender and is a "user" as governed by the FCRA.

16. Defendant **CONSUMER PORTFOLIO SERVICES, INC. ("Consumer Portfolio")** is a Corporation authorized to do business in the Commonwealth of Virginia through its registered agent's office in Glen Allen, Virginia as a credit lender and is a "user" as governed by the FCRA.

17. Defendant **JP MORGAN CHASE BANK, NATIONAL ASSOCIATION, ("Chase")** is a Corporation authorized to do business in the Commonwealth of Virginia through its registered agent's office in Glen Allen, Virginia as a credit lender and is a "user" as governed by the FCRA.

18. Defendant **GATEWAY ONE LENDING & FINANCE** ("**Gateway One**") is a foreign company transacting business in Virginia as a credit lender and is a "user" as governed by the FCRA.

19. Defendant **MANUFACTURERS AND TRADERS TRUST COMPANY ("M&T")** is a Corporation authorized to do business in the Commonwealth of Virginia through its registered agent's office in Richmond, Virginia as a credit lender and is a "user" as governed by the FCRA.

20. Defendant **WELLS FARGO DEALER SERVICES, INC., ("Wells Fargo")** is a Corporation authorized to do business in the Commonwealth of Virginia through its registered agent's office in Richmond, Virginia as a credit lender and is a "user" as governed by the FCRA.

21.     Defendant **AMERICREDIT FINANCIAL SERVICES, INC., ("AmeriCredit")** is a Corporation authorized to do business in the Commonwealth of Virginia through its registered agent's office in Richmond, Virginia as a credit lender and is a "user" as governed by the FCRA.

22.     Defendant **TOYOTA MOTOR CREDIT CORPORATION, ("Toyota")** is a Corporation authorized to do business in the Commonwealth of Virginia through its registered agent's office in Glen Allen, Virginia as a credit lender and is a "user" as governed by the FCRA.

23.     Defendant **REGIONAL ACCEPTANCE CORPORATION, ("Regional")** is a Corporation authorized to do business in the Commonwealth of Virginia through its registered agent's office in Glen Allen, Virginia as a credit lender and is a "user" as governed by the FCRA.

24.     Defendant **ALLY FINANCIAL, INC., ("Ally")** is a Corporation authorized to do business in the Commonwealth of Virginia through its registered agent's office in Glen Allen, Virginia as a credit lender and is a "user" as governed by the FCRA.

25.     Defendant **WESTLAKE SERVICES, INC.,** *doing business as* **Westlake Financial, ("Westlake")** is a Corporation authorized to do business in the Commonwealth of Virginia through its registered agent's office in Glen Allen, Virginia as a credit lender and is a "user" as governed by the FCRA.

26.     Defendant **ONEMAIN FINANCIAL, INC., ("OneMain")** is a Corporation authorized to do business in the Commonwealth of Virginia through its registered agent's office in Glen Allen, Virginia as a credit lender and is a "user" as governed by the FCRA.

27.     Defendant **SANTANDER CONSUMER USA, INC., ("Santander")** is a Corporation authorized to do business in the Commonwealth of Virginia through its registered agent's office in Glen Allen, Virginia as a credit lender and is a "user" as governed by the FCRA.

28.     Defendant **DARCARS AUTOMOTIVE GROUP,** *doing business as* **Darcars**

**Ford, and Darcars Lanham Kia ("DARCARS")** is a foreign company transacting business in Virginia as a credit lender and is a "user" as governed by the FCRA.

## STATEMENT OF FACTS

29.     On or about March 24, 2017, Plaintiff purchased a 2012 Audi S4 vehicle from Washington Motorcars, Inc. located in Arlington, Virginia.    Plaintiff was advised at that time that he had been approved for financing with Capital One.    Plaintiff signed a Retail Installment Agreement and Buyer's Order to complete the deal and left the dealership with his new vehicle.

30.     On or about April 14, 2017, Plaintiff received a phone call from a representative of Washington Motor Cars and was advised for the first time that Capital One had allegedly rejected the assignment for financing.    Plaintiff was advised that he needed to come back to the dealership to sign new documents so that Capital One would agree to finance the transaction.    Plaintiff went back to the dealership and signed new documents regarding the purchase of the vehicle.    Plaintiff was also required to electronically sign a computer screen which purported to show that Capital One had accepted the terms of financing the vehicle.

31.     In May, Washington Motorcars again contacted the Plaintiff to advise that it had been unable to assign the financing of the vehicle to Capital One.    Thereafter on May 29, 2017, the dealer threatened the Plaintiff and advised that he would be arrested if he did not sign the third set of sales documents with regard to the vehicle.

32.     In June 2017, Plaintiff was advised by Washington Motorcars that it still had not been able to secure financing of the vehicle, and again Plaintiff would be required to sign a fourth set of documents.

33.     Plaintiff was the victim of a "spot delivery" or "yo-yo" sale which is a common practice in the automobile sales industry.

34. Plaintiff filed suit against Washington Motorcars, Inc. in the United States District Court, Eastern District of Virginia, Alexandria division on July 18, 2017, Civil Action No. 1:17-00812 for Washington Motorcars, Inc.'s violations of the Truth In Lending Act (TILA); Fair Credit Reporting Act (FCRA); and Violation of the Virginia Consumer Protection Act (VCPA).

35. On or about October 9, 2018, Judge Brinkema entered a default judgment in favor of the Plaintiff for his damages against Washington Motorcars, Inc.

36. At no time during the 3-month long car purchase nightmare did the Plaintiff agree to or allow the financing of the vehicle to be shopped with multiple lenders, other than Capital One in March and April 2017. Plaintiff never signed any type of authorization or give a verbal agreement to allow any car dealer or finance company to obtain his credit information from any source to secure financing for him with regard to the purchase of the vehicle from Washington Motorcars.

37. Beginning in May, 2017, Plaintiff started receiving adverse action letters from lenders on behalf of other car dealers that he had never visited or contacted regarding a vehicle or automobile loan.

38. On or about April 15, 2017, **Capital One** forwarded an adverse letter to advise the Plaintiff that non-party Used Imports Auto, LLC ("Used Imports") had forwarded an application for auto financing on his behalf. Plaintiff had never heard of Used Imports, much less give this company permission to secure financing on his behalf for a vehicle.

39. On or about April 18, 2017, **Chase** forwarded an adverse letter to advise the Plaintiff that Used Imports had forwarded an application for vehicle financing on his behalf. **Chase** advised that it had received a credit report form **Equifax**. On April 7, 2017, **Chase** obtained and used the Plaintiff's consumer report from **Equifax**, without a permissible purpose to do so.

40. On or about May 9, 2017, **Gateway One** forwarded Plaintiff an adverse letter to advise him that a dealership, Lanham Ford, Inc.1 had submitted a Retail Installment Contract on his behalf for vehicle financing. **Gateway One** advised that it had obtained a credit report and score from **Equifax**. On May 9, 2017, **Gateway** obtained and used the Plaintiff's consumer report from **Equifax**, without a permissible purpose to do so.

41. On or about May 10, 2017, **Gateway One** forwarded Plaintiff an adverse letter to advise him that Lanham Ford, Inc. had submitted a Retail Installment Contract on his behalf for vehicle financing. **Gateway One** advised that it had obtained a credit report and score from **Equifax**.

42. On or about May 16, 2017, **M&T** forwarded Plaintiff an adverse letter thanking him for his request for an installment loan. **M&T** advised that it had obtained a credit report from **Equifax** in connection with his request. On May 9, 2017, **M&T** obtained and used the Plaintiff's consumer report from **Equifax**, without a permissible purpose to do so.

43. On or about May 17, 2017, **M&T** forwarded Plaintiff an adverse letter thanking him for his request for an installment loan. **M&T** advised that it had obtained a credit report from **Equifa**x in connection with his request. On May 10, 2017, **M&T** obtained and used the Plaintiff's consumer report from **Equifax**, without a permissible purpose to do so.

44. On or about May 17, 2017, **Capital One** sent the Plaintiff another adverse letter to advise him that Darcars Ford (Lanham Ford, Inc.) had sent it an application for auto financing on his behalf. **Capital One** advised Plaintiff in its letter that it had not pulled his credit report. However, upon later review of his credit reports, Plaintiff noticed that he had an inquiries dated May 9, 2017 by **Capital One** with **Equifax, Experian** and **Trans Union.**

---

1 Plaintiff provides the specific dealership identified in the adverse action letter. On information and belief, each "Lanham" or "Darcars" entity listed below is part of Defendant DARCARS AUTOMOTIVE GROUP.

45.     On or about May 19, 2017, **TD** forwarded Plaintiff an adverse letter regarding an application for sales financing for a motor vehicle from Lanham Ford.   **TD** advised that it had obtained a credit report from **Trans Union** in connection with this request.   **TD** obtained and used the Plaintiff's consumer report from **Trans Union** on May 9, 2017, without a permissible purpose to do so.

46.     On or about May 19, 2017, **Wells Fargo** forwarded Plaintiff an adverse letter regarding a loan application submitted to **Wells Fargo** on his behalf by Darcars Ford/ Lanham Kia.   **Wells Fargo** advised that it had obtained a credit report from **Equifax.**   On May 9, 2017, **Wells Fargo** obtained and used the Plaintiff's consumer report from **Equifax**, without a permissible purpose to do so.

47.     On or about May 20, 2017, **Chase** forwarded Plaintiff an adverse letter to advise him that Darcars Lanham Severn had submitted an application for vehicle financing on his behalf. **Chase** advised that it had obtained a consumer report from **Equifax.**   On May 9, 2017, **Chase** obtained and used the Plaintiff's consumer report from **Equifax**, without a permissible purpose to do so.

48.     On or about May 23, 2017, **Ally** forwarded Plaintiff an adverse letter to advise him that Darcars Lanham Severn was considering a credit sale or lease of a 2012 Audi S4.   **Ally** advised that it had obtained a consumer report about him from **Experian**.   On May 9, 2017, **Ally** obtained and used the Plaintiff's consumer report from **Experian,** without a permissible purpose to do so.

49.     On or about May 24, 2017, **Ally** forwarded Plaintiff an adverse letter to advise him that Darcars Lanham Severn was considering a credit sale or lease of a 2012 Audi S4.   **Ally** advised that it had obtained a consumer report about him from **Experian.**   On May 10, 2017,

**Ally** obtained and used the Plaintiff's consumer report from **Experian,** without a permissible purpose to do so.

50.     On or about May 28, 2017, **AmeriCredit** forwarded Plaintiff an adverse letter to advise him that Darcars Lanham Severn had submitted an application for credit on his behalf. **AmeriCredi**t advised that it had obtained a consumer report from **Equifax**. On May 9, 2017, **AmeriCredit** obtained and used the Plaintiff's consumer report from **Equifax**, without a permissible purpose to do so.

51.     On or about May 30, 2017, **Toyota** forwarded Plaintiff an adverse letter regarding an application for credit through Lanham Ford, Inc.   **Toyota** advised that it had obtained a consumer report from **Equifax**. On May 9, 2017, **Toyota** obtained and used the Plaintiff's consumer report from **Equifax**, without a permissible purpose to do so.

52.     On or about May 30, 2017, **DARCARS** forwarded Plaintiff an adverse letter regarding a recent interest in purchasing a vehicle.   **DARCARS** advised that it had obtained information from **Equifax**.   On May 9, 2017, **DARCARS** obtained and used the Plaintiff's consumer report from **Equifax**, without a permissible purpose to do so.

53.     On or about June 3, 2017, **Regional Acceptance** forwarded Plaintiff an adverse letter regarding a request for automobile financing on his behalf from Lanham Ford.   **Regional Acceptance** advised that it had obtained information from Equifax. On May 10, 2017, **Regional Acceptance** obtained and used the Plaintiff's consumer report from **Equifax**, without a permissible purpose to do so.

54.     In January 2019, Plaintiff obtained and reviewed a copy of his **Equifax, Experian** and **Trans Union** credit reports.   Plaintiff has shocked to see that he had numerous credit inquiries for companies that he had not sought credit for any reason.

55.     On May 9, 2017, **DARCARS** obtained a consumer report about the Plaintiff, without a permissible purpose to do so.

56.     On May 9, 2017 and May 20, 2017, **Santander** obtained a consumer report about the Plaintiff without a permissible purpose to do so.

57.     On May 10, 2017 **Consumer Portfolio** obtained a consumer reports about the Plaintiff from Trans Union and Experian, without a permissible purpose to do so.

58.     On May 11, 2017, **OneMain** obtained a consumer report about the Plaintiff from **Experian**, without a permissible purpose to do so.

59.     On June 14, 2017, **Westlake** obtained a consumer report about the Plaintiff from **Experian,** without a permissible purpose to do so.

60.     Plaintiff had not contacted any of these entities or the car dealerships that submitted applications on his behalf, much less give his permission to obtain his credit reports to secure any type of financing on his behalf.

61.     On information and belief, Plaintiff alleges that **Equifax** did not have a lawful or reasonable basis to believe, let alone know, that **Chase, Gateway One, M&T, Wells Fargo, AmeriCredit, Toyota, DARCARS, Regional Acceptance** and **Capital One** had a permissible purpose to obtain and use Plaintiff's consumer report.

62.     On information and belief, Plaintiff alleges that **Experian** did not have a lawful or reasonable basis to believe, let alone know, that **Ally, Westlake, OneMain, Consumer Portfolio, Santander** and **Capital One** had a permissible purpose to obtain and use Plaintiff's consumer report.

63.     On information and belief, Plaintiff alleges that **Trans Union** did not have a lawful or reasonable basis to believe, let alone know, that **TD Finance, Consumer Portfolio** and **Capital One** had a permissible purpose to obtain and use Plaintiff's consumer report.

64.     On or about April 7, 2017, Defendant **Equifax** provided and published the Plaintiff's consumer report to Defendant **Chase** without permissible purpose and without reasonable procedures to obtain verification that **Chase** had a permissible purpose to obtain the Plaintiff's consumer report.

65.     On or about May 9, 2017 and May 10, 2017, Defendant **Equifax** provided and published the Plaintiff's consumer report to Defendant **Gateway One** without permissible purpose and without reasonable procedures to obtain verification that **Gateway One** had a permissible purpose to obtain the Plaintiff's consumer report.

66.     On or about May 9, 2017 and May 10, 2017, Defendant **Equifax** provided and published the Plaintiff's consumer report to Defendant **M&T** without permissible purpose and without reasonable procedures to obtain verification that **M&T** had a permissible purpose to obtain the Plaintiff's consumer report.

67.     On or about May 9, 2017, Defendant **Equifax** provided and published the Plaintiff's consumer report to Defendant **Wells Fargo** without permissible purpose and without reasonable procedures to obtain verification that **Wells Fargo** had a permissible purpose to obtain the Plaintiff's consumer report.

68.     On or about May 9, 2017, Defendant **Equifax** provided and published the Plaintiff's consumer report to Defendant **Chase** without permissible purpose and without reasonable procedures to obtain verification that **Chase** had a permissible purpose to obtain the Plaintiff's consumer report.

69.     On or about May 9, 2017, Defendant **Equifax** provided and published the Plaintiff's consumer report to Defendant **AmeriCredit** without permissible purpose and without reasonable procedures to obtain verification that **AmeriCredit** had a permissible purpose to obtain the Plaintiff's consumer report.

70.     On or about May 9, 2017, Defendant **Equifax** provided and published the Plaintiff's consumer report to Defendant **Toyota** without permissible purpose and without reasonable procedures to obtain verification that **Toyota** had a permissible purpose to obtain the Plaintiff's consumer report.

71.     On or about May 9, 2017, Defendant **Equifax** provided and published the Plaintiff's consumer report to Defendant **DARCARS** without permissible purpose and without reasonable procedures to obtain verification that **DARCARS** had a permissible purpose to obtain the Plaintiff's consumer report.

72.     On or about May 9, 2017, Defendant **Equifax** provided and published the Plaintiff's consumer report to Defendant **Capital One** without permissible purpose and without reasonable procedures to obtain verification that **Capital One** had a permissible purpose to obtain the Plaintiff's consumer report.

73.     On or about May 9, 2017 and May 10, 2017, Defendant **Experian** provided and published the Plaintiff's consumer report to Defendant **Ally** without permissible purpose and without reasonable procedures to obtain verification that **Ally** had a permissible purpose to obtain the Plaintiff's consumer report.

74.     On or about May 9, 2017 and May 10, 2017, Defendant **Experian** provided and published the Plaintiff's consumer report to Defendant **Santander** without permissible purpose

and without reasonable procedures to obtain verification that **Santander** had a permissible purpose to obtain the Plaintiff's consumer report.

75.    On or about May 9, 2017, Defendant **Experian** provided and published the Plaintiff's consumer report to Defendant **Capital One** without permissible purpose and without reasonable procedures to obtain verification that **Capital One** had a permissible purpose to obtain the Plaintiff's consumer report.

76.    On or about May 9, 2017, Defendant **Trans Union** provided and published the Plaintiff's consumer report to Defendant **TD Finance** without permissible purpose and without reasonable procedures to obtain verification that **TD Finance** had a permissible purpose to obtain the Plaintiff's consumer report.

77.    On or about May 9, 2017, Defendant **Trans Union** provided and published the Plaintiff's consumer report to Defendant **Capital One** without permissible purpose and without reasonable procedures to obtain verification that **Capital One** had a permissible purpose to obtain the Plaintiff's consumer report.

78.    On or about May 10, 2017, Defendant **Equifax** provided and published the Plaintiff's consumer report to Defendant **Regional Acceptance** without permissible purpose and without reasonable procedures to obtain verification that **Regional Acceptance** had a permissible purpose to obtain the Plaintiff's consumer report.

79.    On or about May 10, 2017, Defendant **Experian** provided and published the Plaintiff's consumer report to Defendant **Consumer Portfolio** without permissible purpose and without reasonable procedures to obtain verification that **Consumer Portfolio** had a permissible purpose to obtain the Plaintiff's consumer report.

80. On or about May 10, 2017, Defendant **Trans Union** provided and published the Plaintiff's consumer report to Defendant **Consumer Portfolio** without permissible purpose and without reasonable procedures to obtain verification that **Consumer Portfolio** had a permissible purpose to obtain the Plaintiff's consumer report.

81. On or about May 11, 2017, Defendant **Experian** provided and published the Plaintiff's consumer report to Defendant **OneMain** without permissible purpose and without reasonable procedures to obtain verification that **OneMain** had a permissible purpose to obtain the Plaintiff's consumer report.

82. On or about June 14, 2017, Defendant **Experian** provided and published the Plaintiff's consumer report to Defendant **Westlake Financial** without permissible purpose and without reasonable procedures to obtain verification that **Westlake Financial** had a permissible purpose to obtain the Plaintiff's consumer report.

## COUNT ONE
## VIOLATION OF 15 U.S.C.§1681b(a)
### (Equifax, Experian and Trans Union)

83. Plaintiff reiterates and incorporates the allegations contained in paragraphs 1 through 82 above as if fully set out herein.

84. Defendant **Equifax** violated 15 U.S.C. §1681b on numerous occasions by providing the Plaintiff's consumer reports to Defendants **Chase, Gateway One, MM&T, Wells Fargo, AmeriCredit, Toyota, DARCARS, Regional Acceptance** and **Capital One** without a permissible purpose to do so.

85. Defendant **Experian** violated 15 U.S.C. §1681b on numerous occasions by providing the Plaintiff's consumer reports to Defendants **Ally, Westlake Financial, OneMain, Consumer Portfolio, Santander** and **Capital One** without a permissible purpose to do so.

86. Defendant **Trans Union** violated the 15 U.S.C. §1681b on numerous occasions by providing the Plaintiff's consumer reports to Defendants **TD, Capital One** and **Consumer Portfolio** without a permissible purpose to do so.

87. As a result of Defendants **Equifax, Experian** and **Trans Union's** conduct, the Plaintiff suffered actual damages including, without limitation, credit damage related to each impermissible pull, violation of privacy, and other emotional and mental distress.

88. **Equifax, Experian** and **Trans Union's** violations were willful, rendering each of the Defendants individually liable for punitive damages in the amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, **Equifax, Experian** and **Trans Union** were negligent, entitling the Plaintiff to recovery under 15 U.S.C. §1681o.

89. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from **Equifax, Experian** and **Trans Union** in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

**COUNT TWO**
**VIOLATION OF 15 U.S.C.§1681b(f)**
**(TD, Capital One, Consumer Portfolio, Chase, Gateway One, M&T, Wells Fargo, AmeriCredit, Toyota, DARCARS, Regional Acceptance, Ally, Westlake, OneMain and Santander)**

90. Plaintiff reiterates and incorporates the allegations contained in paragraphs 1 through 89 above as if fully set out herein.

91. Defendants **TD, Capital One, Consumer Portfolio, Chase, Gateway One, M&T, Wells Fargo, AmeriCredit, Toyota, DARCARS, Regional Acceptance, Ally, Westlake, OneMain** and **Santander** each violated 15 U.S.C. §1681b(f) by obtaining and using the Plaintiff's consumer reports without a permissible purpose to do so.

92.     Defendants **TD, Capital One, Consumer Portfolio, Chase, Gateway One, M&T, Wells Fargo, AmeriCredit, Toyota, DARCARS, Regional Acceptance, Ally, Westlake, OneMain** and **Santander** each violated §1681b(f) by failing to accurately and lawfully certify a permissible purpose to **Equifax, Experian** and **Trans Union**.

93.     As a result of Defendants **TD, Capital One, Consumer Portfolio, Chase, Gateway One, M&T, Wells Fargo, AmeriCredit, Toyota, DARCARS, Regional Acceptance, Ally, Westlake, OneMain** and **Santander's** conduct, the Plaintiff suffered actual damages including, without limitation, credit damage related to each impermissible pull, violation of privacy, and other emotional and mental distress.

94.     **TD, Capital One, Consumer Portfolio, Chase, Gateway One, M&T, Wells Fargo, AmeriCredit, Toyota, DARCARS, Regional Acceptance, Ally, Westlake, OneMain and Santander's** violations were willful, rendering each of the Defendants individually liable for punitive damages in the amount to be determined by the Court pursuant to 15 U.S.C. §1681n.   In the alternative, **TD, Capital One, Consumer Portfolio, Chase, Gateway One, M&T, Wells Fargo, AmeriCredit, Toyota, DARCARS, Regional Acceptance, Ally, Westlake, OneMain** and **Santander** were negligent, entitling the Plaintiff to recovery under 15 U.S.C. §1681o.

95.     Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from **TD, Capital One, Consumer Portfolio, Chase, Gateway One, M&T, Wells Fargo, AmeriCredit, Toyota, DARCARS, Regional Acceptance, Ally, Westlake, OneMain** and **Santander** in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

**COUNT THREE**
**VIOLATION OF 15 U.S.C. §1681e(a)**
**(Equifax, Experian and Trans Union)**

96.     Plaintiff reiterates and incorporates the allegations contained in paragraphs 1 through 95 above as if fully set out herein.

97.     Defendant **Equifax** violated 15 U.S.C. §1681e(a) by providing the Plaintiff's consumer report to Defendants, **Chase, Gateway One, M&T, Wells Fargo, AmeriCredit, Toyota, DARCARS, Regional Acceptance** and **Capital One** without reasonable procedures to assume the proper use of and lawful purpose for such reports.

98.     Defendant **Experian** violated 15 U.S.C. §1681e(a) by providing the Plaintiff's consumer report to Defendants, **Ally, Westlake Financial, OneMain, Consumer Portfolio, Santander** and **Capital One** without reasonable procedures to assume the proper use and lawful purpose for such reports.

99.     Defendant **Trans Union** violated 15 U.S.C. §1681e(a) by providing the Plaintiff's consumer report to Defendants, **TD, Capital One** and **Consumer Portfolio** without reasonable procedures to assume the proper use and lawful purpose for such reports.

100.    As a result of Defendants **Equifax, Experian** and **Trans Union's** conduct, the Plaintiff suffered actual damages including, without limitation, credit damage related to each impermissible pull, violation of privacy, and other emotional and mental distress.

101.    **Equifax, Experian** and **Trans Union's** violations were willful, rendering each of the Defendants individually liable for punitive damages in the amount to be determined by the Court pursuant to 15 U.S.C. §1681n.   In the alternative, **Equifax, Experian** and **Trans Union** were negligent, entitling the Plaintiff to recovery under 15 U.S.C. §1681o.

102.    Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from **Equifax, Experian** and **Trans Union** in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

## COUNT FOUR
## VIOLATION OF 15 U.S.C. §1681m
### (Consumer Portfolio, Westlake Financial, OneMain and Santander)

103.    Plaintiff reiterates and incorporates the allegations contained in paragraphs 1 through 102 above as if fully set out herein.

104.    Defendants **Consumer Portfolio, Westlake, OneMain** and **Santander** each violated 15 U.S.C. §1681m by failing to provide a written notice of adverse action to the Plaintiff.

105.    Defendants, **Consumer Portfolio, Westlake, OneMain** and **Santander** each violated 15 U.S.C. §1681m(2) and (3) by failing to provide the required notice information to the Plaintiff.

106.    As a result of Defendants **Consumer Portfolio, Westlake, OneMain** and **Santander's** conduct, the Plaintiff suffered actual damages including, without limitation, credit damage related to each impermissible pull, violation of privacy, and other emotional and mental distress.

107.    Defendants **Consumer Portfolio, Westlake, OneMain** and **Santander's** violations were willful, rendering each of the Defendants individually liable for punitive damages in the amount to be determined by the Court pursuant to 15 U.S.C. §1681n.   In the alternative, **Consumer Portfolio, Westlake, OneMain** and **Santander** were negligent, entitling the Plaintiff to recovery under 15 U.S.C. §1681o.

108.    Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from **Consumer Portfolio, Westlake, OneMain** and **Santander** in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

WHEREFORE, Plaintiff demands judgment for actual, statutory and punitive damages against the Defendants, jointly and severally, for his attorneys' fees and costs; for prejudgment

and post-judgment interest at the judgment rate; specific performance and injunctive relief; and such other relief the Court deems just and proper.

**TRIAL BY JURY IS DEMANDED.**

**JOSEPH O. FASUSI,**
By: ___*/s/Leonard A. Bennett*___
Leonard A. Bennett, VSB#37523
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
(757) 930-3660 – Telephone
(757) 930-3662 – Facsimile
Email: lenbennett@clalegal.com

Elizabeth Hanes, VSB#75574
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
(757) 930-3660 – Telephone
(757) 930-3662 – Facsimile
Email: elizabeth@clalegal.com

Craig C. Marchiando, VSB#89736
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
(757) 930-3660 – Telephone
(757) 930-3662 – Facsimile
Email: craig@clalegal.com

Thomas R. Breeden
THOMAS R. BREEDEN, P.C.
10326 Lomond Drive
Manassas, VA 20109
(703) 361-9277 – Telephone
(703) 257-2259 – Facsimile
E-mail: trb@tbreedenlaw.com

*Counsel for Plaintiff*